[No. 13545.  In Bank. — March 1, 1890.]

# F. H. McALLISTER, RESPONDENT, v. E. W. HAMLIN, AUDITOR, ETC., APPELLANT.

SHORT-HAND REPORTER — COMPENSATION — JUDICIAL ACTION OF COMMITTING MAGISTRATE — POWER OF SUPERVISORS — DUTY OF AUDITOR — MANDAMUS. — The compensation of a short-hand reporter, who acts under appointment of a justice of the peace in taking down testimony given before him as a committing magistrate, may be fixed by the magistrate after the services are rendered, under the terms of subdivision 6 of section 869 of the Penal Code, not exceeding the compensation allowed such reporters in the superior courts under section 274 of the Code of Civil Procedure, as it stood before the unconstitutional amendment thereof of March 21, 1885.  The action of such magistrate is judicial, and not legislative, and the board of supervisors is not required to allow or settle the claim, or supervise the action of the magistrate.  It is the

83  361
127  158
f127  162

83  361
133  116

83  361
148  263

83  361
f149  737

duty of the county auditor to draw his warrant on the treasurer for the amount properly allowed by the magistrate on his certificate and order, and he may be compelled by *mandamus* to perform such duty.

CONSTITUTIONAL LAW — STATUTES — REPEAL BY IMPLICATION. — No repeal by implication can result from a provision in a subsequent statute, when that provision is itself devoid of constitutional force.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion.

*Anderson, Fitzgerald & Anderson, J. M. Damron,* and *Frank P. Kelly,* for Appellant.

*Del Valle & Munday,* and *Hutton & Swanwick,* for Respondent.

FOOTE, C. — This action is for a writ of mandate to compel Mr. E. W. Hamlin, the auditor for the county of Los Angeles, to draw a warrant on the treasurer of that county for the sum of $34.40, the same being the amount of compensation allowed the petitioner, and respondent here, for services rendered as a short-hand reporter, under an appointment made by a justice of the peace of that county, in taking down in short-hand the testimony of witnesses examined before the justice of the peace as a committing magistrate in a criminal action where the state of California was plaintiff and one J. J. Hedges was defendant. The court below granted the writ as prayed. From the judgment rendered in the premises this appeal is taken.

The point to be determined seems to be, in what way and at what rate a short-hand reporter performing such services is to be paid.

The petitioner's contention is, that the method of his compensation, after being appointed to act, is fixed by section 869 of the Penal Code, subdivision 6, which is: "The reporter's compensation shall be fixed by the magistrate before whom the examination is had, and shall

not exceed that now allowed reporters in the superior
courts of this state, and shall be paid out of the treasury
of the county or the city and county in which the ex-
amination is had, on the certificate and order of the said
magistrate."

Here the proper certificate and order were made.

The legislative intent to be gathered from the lan-
guage of the statute was, that short-hand reporters ap-
pointed to perform such services as this were to be paid
out of the county or city and county treasury by the
magistrate exercising a sound discretion in fixing the
compensation for the services *after* they were rendered,
but such fixing to be within a certain prescribed limit;
that is, not to "exceed that now allowed reporters in the
superior courts of this state."    There is no question
raised but what the auditor must draw the warrant if
the magistrate had the power to fix the compensation
and allow it under the subdivision of the section, *supra*,
without any action by the board of supervisors.    This
law went into effect on the fourteenth day of March,
1885.   At that date section 274 of the Code of Civil Pro-
cedure upon that subject ran thus:  "The official re-
porter shall receive as compensation for his services in
civil actions and proceedings, for taking notes, a sum to
be fixed by the court, or a judge thereof, not exceeding
ten dollars per day, and for transcription a sum to be in
like manner fixed, not exceeding twenty cents per hun-
dred words; provided, that . . . . in criminal cases,
when the testimony has been taken down or transcribed
upon the order of the court, the fees of the reporter shall
be certified by the court, and paid out of the treasury of
the county or city and county in which the case is tried,
upon the order of the court."

So that if no valid amendment to that section existed
up to the time of the allowance made for the services
rendered in this matter, such section would have limited
the exercise of the discretion of the magistrate, and he

could not have made an order for compensation exceeding ten dollars per day for taking notes, and for transcription a sum not exceeding twenty cents per hundred words.

On the twenty-first day of March, 1885, the legislature amended section 274, *supra* (Deering's Code Civ. Proc. p. 70), and made the compensation for short-hand reporters in the superior courts to depend upon a salary to be fixed "by the judge by an order duly entered on the minutes of the court, which salary shall be paid out of the treasury of the county in the same manner and at the same time as the salaries of county officers."

It then appears that after the 21st of March, 1885, the legislature intended that the compensation of short-hand reporters in superior courts, instead of being on the basis of fees to be fixed by the judge, who could not exceed the limit fixed by the legislature, should be by a salary to be fixed by the judge by an order duly entered on the minutes of the court, to be paid out of the county treasury as the salaries of other county officers are paid; providing, also, that the salary should be graded on the basis of the population of the various counties.

In *Smith* v. *Strother*, 68 Cal. 194, it was held that this method of compensation for short-hand reporters was unconstitutional; that the legislative act attempted to throw upon the judicial branch of the state government a legislative function.

If the legislative intent was, as we think, in enacting subdivision 6 of section 869 of the Penal Code on the 14th of March, 1885, that the compensation for such services as are here involved was to be fixed on the basis established by section 274 of the Code of Civil Procedure as it stood *then*, at the time when subdivision 6 became a law on the 14th of March, 1885, and the unconstitutional act of March 21, 1885 (Deering's Code Civ. Proc., sec. 274), not being then in existence, was

not intended to be referred to, when in the section and subdivision first mentioned the words "not to exceed that now allowed reporters in the superior courts of this state" were used, it must be plain that the method of compensation and the amount is fixed by section 274 of the Code of Civil Procedure before the amendment of March 21, 1885. If, however, it is to be gathered from all the acts taken together that the legislature intended subdivision 6 of section 869 of the Penal Code to be governed by the provisions of the act afterward held unconstitutional, it is equally certain, when that act was declared unconstitutional for the reasons assigned by the appellate court, heretofore referred to, that section 274 of the Code of Civil Procedure as it stood before the passage of the unconstitutional act amendatory of it remained the law.

For "no repeal by implication can result from a provision in a subsequent statute, when that provision is itself devoid of constitutional force." (Endlich on Interpretation of Statutes, sec. 192.)

Hence the petitioner had a right to his compensation as fixed by the magistrate, acting within the bounds of the legislative authority. But it is urged further that the respondent was not entitled to have the auditor draw the warrant on the mere certificate and order of the magistrate; that the auditor could not be compelled to draw the warrant *until the board of supervisors of the county had allowed the claim.*

The reason assigned in support of this contention is, that the county government act, subdivision 12 of section 25 of the Political Code, provides for the allowance of such demands as is here under consideration.

The language of that subdivision, defining one of the powers of the board of supervisors, is: "To examine, settle, and allow all accounts legally chargeable against the county, except salaries of officers, and order warrants to be drawn on the county treasurer therefor."

The county government act of March 14, 1883, contained the same provision exactly, and it was in force at the date of the decision of the appellate court in *Ex parte Reis*, 64 Cal. 233. From the opinion delivered in that case, it will be seen that it was held it could not have been the legislative intent that a board of supervisors was to supervise a court with reference to matters confided to its judicial discretion by the legislature.

We conclude, therefore, with reference to this matter, that it was not the legislative understanding that the subdivision and section, *supra*, of the county government act was in conflict with subdivision 6 of section 869 of the Penal Code, where the last-mentioned declares that such a demand as here discussed "shall be paid out of the treasury of the county or city and county in which the examination is had on the certificate and order of said magistrate." And no mention is made or hint given that any action is necessary on the part of the board of supervisors. Nor is it apparent that the legislature intended, when it enacted subdivision 6 of section 869 of the Penal Code, that its provisions should be of no avail, so far as the power given the magistrate was concerned, by reason of the subdivision and section above referred to in the county government act.

The legislature did not intend, when it passed the section of the Penal Code, that, notwithstanding it authorized the *fixing* by the exercise of judicial discretion by the magistrate of the reporter's compensation, nevertheless it was left with the board of supervisors, in their discretion as a superior supervising body, to *unfix* what had been confided by the legislature to the judicial tribunal. With this understanding the county government act and the section of the Penal Code can both stand, and not conflict in any way.

The demands and accounts to be allowed by the board of supervisors are not those which the legislature has expressly authorized the judicial branch of the govern-

ment to certify to and order paid out of the treasury of the county, or that of the city and county.   No such supervisory power over the courts of the state was ever intended to be lodged with the board of supervisors by the county government act.

"To the judge of the proper court the statute commits the discretion of making the orders for such payments; where such a discretion is by law conferred upon a specific officer, such officer must exercise that discretion personally.   And when properly exercised, the board of supervisors is not required to supervise the action of the court."   (*Aid Society* v. *Reis,* 71 Cal. 634, and authorities there cited.)

We therefore conclude that the functions to be performed by the magistrate in such a matter is not legislative, but judicial; that the law under which he is authorized to act is not unconstitutional; and that the county auditor should draw the warrant on the treasurer without any supervision by the board of supervisors of the properly performed judicial action of the magistrate.

We therefore advise that the judgment be affirmed.

BELCHER, C. C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.