[S. F. No. 1973.   Department One.—December 13, 1899.]

JOSEPH P. STEVENS, Respondent, v. I. J. TRUMAN, Treasurer of City and County of San Francisco, Appellant.

PHONOGRAPHIC REPORTERS—ORDER FOR PAYMENT OF COMPENSATION—MANDAMUS—PLEADING.—A petition for *mandamus* against the treasurer to enforce payment of the compensation of a phonographic reporter for services in felony cases, ordered to be paid by the superior court, under section 274 of the Code of Civil Procedure as it stood under the amendment of 1880, must state that the treasurer has funds in his hands applicable to the payment of the demand, else it is insufficient to show that the treasurer is under legal duty to pay the order.

ID.—ISSUE AS TO WANT OF FUNDS—ADMISSION AT TRIAL AS TO GENERAL FUND—WAIVER OF OBJECTION TO PETITION.—Where the answer of the treasurer pleaded that there were no funds applicable to the payment of the amount fixed by the order, and both parties treated the sufficiency of the various funds to meet it as in issue, and it was admitted by the treasurer at the trial that there was sufficient money in the general fund to pay the amount, and no objection was made to the findings showing the amounts in the various funds, the judgment should not be reversed for want of an allegation in the petition as to the sufficiency of money in the treasury for that purpose.

ID.—AUDIT OF CLAIM—PAYMENT FROM GENERAL FUND.—It is not necessary to the payment of a claim for the services of a phonographic reporter, fixed by the court pursuant to law, that it must have been presented to the auditor; nor is it necessary that the order of the court for its payment should have designated the fund out of which it is to be paid, but the order is to be made upon the treasury and is payable out of the general fund.

ID.—POWER OF SUPERVISORS TO DESIGNATE SPECIAL FUND.—The supervisors have no power to defeat the law by designating a special fund for the payment of phonographic reporters, which is insufficient to pay all legal demands upon the treasury therefor, while there is sufficiency of money in the general fund to meet them.

ID.—CONSTITUTIONAL LAW—VALIDITY OF AMENDMENT OF 1880—JUDICIAL ACTION.—The amendment of 1880 to section 274 of the Code of Civil Procedure is constitutional and valid. The court, in fix-

ing the compensation of its own reporter thereunder, is not fixing the salary of a county officer, but is adjusting compensation for services of a ministerial officer of the court, and in so doing acts not in a legislative, but in a judicial capacity.

ID.—UNCONSTITUTIONAL AMENDMENT OF 1885—REPEAL.—The amendment of 1885 to section 274 of the Code of Civil Procedure authorizing the court to order payment of a monthly salary of an official reporter out of the treasury is unconstitutional and invalid for any purpose, and cannot operate as a repeal of the amendment of 1880.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Carroll Cook, Judge.

The facts are stated in the opinion.

I. J. Truman, Jr., and J. H. Dickinson, for Appellant.

George D. Collins, for Respondent.

CHIPMAN, C.—Appeal from a judgment for a peremptory writ of mandate ordering appellant to pay to plaintiff one hundred and seventeen dollars for services as the regular phonographic reporter in Department 12 of the superior court in and for the city and county of San Francisco.

Plaintiff was duly appointed the phonographic reporter of the above-named court; he performed services as such, under order of the court, in certain felony cases and transcribed the testimony, the value of which services was found to be the above amount. Thereafter, to wit, on April 8, 1899, he served upon defendant an order of the court duly given and made, accompanied by a certificate of said services and their value, directing defendant to pay the said amount, which defendant refused to do. The matter was heard before Judge Carroll Cook, who gave judgment for plaintiff and ordered the writ to issue, commanding defendant to pay plaintiff the amount claimed, "out of the treasury of the said city and county of San Francisco."

Appellant attacks the judgment upon the following grounds: 1. By demurrer, for insufficiency of the complaint; 2. Section 274 of the Code of Civil Procedure, as passed in 1880, is unconstitutional; 3. The order appointing plaintiff as the regular official reporter of the court is void, as the power to appoint

was taken away from the court by the act of March 21, 1885 (Stats. 1885, p. 218), amending said section 274; 4. The order of April 8, 1899, was not audited by the auditor of the city and county; 5. The order did not designate the fund out of which payment should be made; 6. There was no money in the treasury because the fund out of which payment could be made was exhausted.

1. The point upon demurrer is that the petition does not state that there was money to pay the order, or that the treasurer had the ability to comply with the writ. (Citing *Redding v. Bell,* 4 Cal. 333.)

There was no duty put upon appellant, as treasurer, to pay the order unless he had funds in his control applicable to that purpose, and whether he had the ability to comply with the order ought to have been shown. The rules of pleading in seeking the extraordinary aid of *mandamus* require the petitioner to show a clear *prima facie* case to warrant the alternative writ. There should be sufficient facts stated in the petition to show that the defendant is under legal obligation or duty to perform the required act. (High's Extraordinary Legal Remedies, secs. 449, 450; Wood on Mandamus, 18; *Redding v. Bell, supra.*) The complaint failed to allege that there was any fund out of which plaintiff could be paid, and was, therefore, insufficient. The defendant, however, alleged in his answer that there were no funds in the treasury out of which he could pay plaintiff; but at the trial defendant admitted that there were funds in the treasury to the credit of the general fund greatly in excess of plaintiff's claim, and no objection was then made to evidence being introduced upon that point, and no objection is now made to the findings of the amount of money in the treasury to the credit of that fund. The cause was tried by both parties upon the theory that the condition of the various funds was an issue in the case, and no objections to the findings are now urged as to the facts found touching the amounts to the credit of those funds. Under such circumstances, we do not think that the judgment should be reversed for the failure to allege that there was money in the treasury out of which plaintiff could have been paid.

2. It was not necessary to the payment of the claim that it

should have been presented to the auditor. (*Ex parte Reis,* 64 Cal. 233. See, also, *Boys etc. Aid Soc. v. Reis,* 71 Cal. 627; *McAllister v. Hamlin,* 83 Cal. 363.)

3. Nor was it necessary to the validity of the order of the court that it should have designated the fund out of which to make payment. The code directs the payment to be made "out of the treasury of the county in which the case is tried, upon the order of the court." The duty is devolved upon the court, after having fixed the compensation to be paid, to make the order upon the treasury of the county. It is made the duty of the treasurer to "receive and safely keep . . . . all moneys belonging to . . . . the treasury." (Consolidation Act, sec. 79.) The term "treasury" includes all the moneys of the municipality under the control of the treasurer, whether belonging to a designated fund or not. The act declares that "the general fund consists of all moneys in the treasury not designated and set apart to a specified use, and of the overplus of any special fund remaining after the satisfaction of all demands upon it." (Consolidation Act, sec. 76.) If there were no other specially designated funds, the general fund would constitute the treasury. Section 71 provides that "the general fund shall be applied and used for the payment of all sums authorized by law to be paid out of the general fund and not otherwise provided for in this act." The order of the court upon the treasury, therefore, was an order for payment out of the general fund. The fact that a fund had been designated for the payment of phonographic reporters could not in any way affect the provisions of section 274 of the Code of Civil Procedure (amendment of 1880), by which it became the duty of the court to make the order upon the treasury. The board of supervisors could not defeat the law by creating a special fund which might be inadequate to meet the payment of such claims as this, or, indeed, might be so limited as to seriously affect the administration of justice by the courts. (*San Francisco v. Broderick,* 111 Cal. 302.) The evidence is, and the court found, that when the order was presented the special fund, to which moneys had been transferred for payment of such claims, was exhausted, but there remained unappropriated, in the general fund, two hundred and five thousand seven hundred and fifty-seven dollars and forty-two cents.

We think this fund was applicable to the payment of the order of the court. (*Ex parte Reis, supra,* and other cases cited *supra.*)

4. The principal point relied upon is the unconstitutionality of section 274 of the Code of Civil Procedure, as it was enacted by the act of April 1, 1880 (Stats. 1880, p. 63, at p. 99), which reads: "In criminal cases, when the testimony has been taken down or transcribed upon the order of the court, the fees of the reporter shall be certified by the court, and paid out of the treasury of the county, or city and county, in which the case is tried, upon the order of the court." This section was amended by act of March 21, 1885 (Stats. 1885, p. 218), in which it was undertaken to make the reporter a salaried officer of the court and to give the judge of the court the power to fix the monthly salary.

The amendment of 1885 was in some particulars held to be unconstitutional, and appellant contends in all other particulars it must stand and therefore works the repeal of the section as it stood in 1880. Just what effect this contention, if sound, would have upon the case here need not be considered, for we are clearly of the opinion that the amendment of 1885 has no longer a foot to stand upon. (*Smith v. Strother,* 68 Cal. 194; *James v. McCann,* 93 Cal. 513; *Taylor v. McConigle,* 120 Cal. 123. See, also, *Los Angeles v. Pomeroy,* 124 Cal. 597.) We do not think the section as amended is susceptible of division so as to preserve the portion not distinctly held to be unconstitutional, and the court has so intimated in the cases *supra.* We must deal alone with the section as amended in 1880. (*Los Angeles v. Pomeroy, supra.*) It is attacked as violative of section 1, article III, of the constitution, as conferring legislative power upon the judicial department of government. The court has frequently had this section of the code before it, and has found in it authority both to appoint a reporter and fix his compensation for services rendered and order payment either by one or both of the parties, if in a civil action, or by giving an order on the treasury of the county if in a criminal case. As to the latter class of cases see *Ex parte Reis, supra; People v. Lon Me,* 49 Cal. 353; *McAllister v. Hamlin, supra.* As to civil cases see *Rhodes v. Spencer,* 68 Cal. 199; *Barkly v.*

*Copeland,* 86 Cal. 493; *James v. McCann, supra; Taylor v. McConigle, supra; Los Angeles v. Pomeroy, supra.*

It is not reasonable to suppose that the court of last resort in all these cases unwittingly lent its aid to the enforcement of statutes which violated the constitution. It is more reasonable to assume that the court treated the statutes as constitutional. However this may be, we think the question here presented has been directly passed upon, as will be noticed later.

Substantially the same legislation was put in force as early as 1861 (Stats. 1861, p. 497), and has been in force ever since. The section of the constitution of 1849 is identical with the section of the constitution of 1879 relied upon. While perhaps not conclusive, the fact that the courts have exercised the power under the old and new constitutions for nearly forty years gives a practical construction of these instruments which ought to have great weight in determining the question, if any doubt exists. (Cooley's Constitutional Limitations, 81 et seq.)

Some of the various statutes which have been passed on this subject will be found in the opinions of Justices McKinstry and Thornton in *Ex parte Reis, supra,* and need not be recapitulated here.

The official or phonographic reporters of superior courts are authorized to be appointed by the judge or judges of such courts under part I of the Code of Civil Procedure, sections 268-74, as the law was enacted April 1, 1880 (Stats. 1880, p. 63; see pp. 97-99). The compensation to be paid reporters, except where otherwise provided by the County Government Act of April 1, 1897 (Stats. 1897, p. 452), is regulated under the amendment of 1880.

As to the city and county of San Francisco, and the counties of certain sixteen other classes, the County Government Act makes no provision whatever for appointing or fixing the compensation of court reporters. In all these the act of 1880 apparently is the only law in force. In some of the other classes the County Government Act gives the judges the power to appoint, but the act fixes the compensation by a monthly salary in some cases and by per diem in others; but in four of these counties the provision is that the reporter "shall receive as compensation such fees as are now allowed by law." In classes 48

and 49 the County Government Act makes a provision still different from all the others, by which in certain cases the boards of supervisors may fix the compensation.

The utter lack of uniformity in the law in providing for the appointment of reporters and fixing their compensation shows that the legislature has regarded these persons as a part of the machinery of the courts rather than as officers of government in any sense. As expressed by Mr. Justice Thornton, in *Ex parte Reis, supra:* "In view of the law-making power, these reporters were regarded as official adjuncts of the courts of justice," or as "ministerial officers of the courts."

The reporter is not among the enumerated county officers (Pol. Code, sec. 4103); and, while the legislature could create the office of official reporter and make it a county office, it has not done so in the city and county of San Francisco. The legislature has simply authorized the judge of the court to employ a person to take down and transcribe shorthand notes of court proceedings, who shall be known as phonographic reporter of the court. In civil cases his duties cannot be said to be public in any sense; in criminal cases they may be so regarded in a limited sense, inasmuch as the services are paid for out of public funds; but rendering services for the public does not of itself make him a public officer. We do not think that the fixing of the salary of a person who performs some service for the public, nor the fact that such person is required to take an oath that he will faithfully discharge his duties, would necessarily make such person a public officer or his employment an office.

The provisions of section 869 of the Penal Code confer powers upon the magistrate similar to those found in section 274 of the Code of Civil Procedure. In *McAllister v. Hamlin, supra,* section 869 was held to be constitutional, and it was also held that the magistrate, in fixing the compensation of the reporter acts in a judicial and not in a legislative capacity.

The amendment of section 274 of the Code of Civil Procedure by the act of 1885, was held unconstitutional in the case of *Smith v. Strother, supra,* for the reason that the act undertook to confer powers upon the judge which were legislative in their nature and could not be delegated—namely, to fix the monthly salary of the reporter for future services to be

rendered. The court said: "The act of 1885, amending section 274 of the Code of Civil Procedure, is different from the section as it stood before amended. Under the section as it stood before it was amended, the amount to be paid the reporter was fixed on valuation of the services rendered by the court or judge after they have been rendered. The court or judge under that section acted on a case which had transpired before any action was taken. The difference between the two is plain and palpable." The court disclaimed any intention to decide that the mode provided under the act of 1880 is constitutional. We think, however, that upon the authority of *McAllister v. Hamlin, supra,* we must hold the act to be constitutional.

It is advised that the judgment be affirmed.

Cooper, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.    Harrison, J., Garoutte, J., Van Dyke, J.