# JOSIE E. M. NIELSEN et al.

## vs

# LUCY V. RICHARDS, Butte County Auditor

## SUPERIOR COURT, COUNTY OF BUTTE.

( Supervising Teacher's Salary Case. )

November 14th, 1923.

---

Petitions by Josie E. M. Nielsen and by A. W. Churley against Lucy V. Richards auditor, etc., for writs of mandate to compel issue of salary warrants on County Treasurer for services as supervising teacher.   On respondents demurrer to the petitions.   Demurrer sustained.

---

I. SCHOOLS AND SCHOOL DISTRICTS — GENERAL STATE LAW CONTROLS CONFLICTING COUNTY CHARTER.

Pol. Code Sec. 1543 Subds. 15 and 18 providing for the appointment of teachers to supervise teaching in the school districts of the county, etc., and for visiting of schools at least once each year prevails over Butte County Charter Art. VII, Sec. 5 providing for supervising deputy and for schools every other month they being in conflict.

2. CONSTITUTIONAL LAW — COUNTY CHARTER PROVISION FOR SCHOOL SUPERVISIONS UNCONSTITUTIONAL.

Butte County Charter Art. VII Sec. 3(b) authorizing the Board of County School Trustees to appoint a supervising deputy superintendent of schools is not a valid provision under Const. Art. XI, Sec. 7½ Subd. 5, providing for charter enactments for although the right is given to establish the office under Subd. 6, it does not authorize a charter provision for fixing term of office or compensation or for his appointment, but authorizes a provision to authorize the Board of Supervisors to provide for appointment, manner of appointment and term of office and compensation. and this to be fixed by ordinance which has not been done, and cannot be done without charter authorization, so that supervisors appointed under charter cannot compel auditor by mandamus to issue salary warrants on treasurer.

3. SCHOOLS AND SCHOOL DISTRICTS — SUPERVISING TEACHERS HELD ILLEGALLY APPOINTED.

While Pol. Code Sec. 1543 Subd. 18, authorizes the Superintendent of Schools of the county to employ supervising teachers, it does not directly or by implication authorize him to fix their compensation, but such is left to the Supervisors and under Const. Art. XI Sec. 7½ Subd. 5 and Butte County Charter Art. III, Sec. 3, amendment No. 2, and they must by ordinance fix the number of supervising teachers, terms and compensation before the superintendent can lawfully appoint such teachers, which they have not done.

4. COUNTIES — CHARTER A LEGISLATIVE ENACTMENT.

The Butte County Charter is not an enactment of the freeholders of the county or of the Board of Supervisors for while the free-holders framed the charter and the people adopted it, still the legislature approved it, making it a legislative enactment with full force, subject only to the constitutional and the general law.

5. SCHOOLS AND SCHOOL DISTRICTS — SUPT. OF COUNTY NOT AUTHORIZED TO APPOINT SUPERVISING TEACHERS AND FIX SALARIES.

The County Superintendent of Schools of Butte County has not the power to appoint supervising teachers and fix their salaries, but can do so only under authorization of Board of County Supervisors by ordinance in view of Const. Art. XI Sec. 13, and Pol. Code Sec. 1858 Subd. 3 and 1543 Subd. 18.

6. SCHOOLS AND SCHOOL DISTRICTS — COUNTY CHARTER HELD TO CREATE NEW OFFICE AND HENCE INVALID.

Appointment of a Deputy County Superintendent of Schools under Butte County Charter Art. VII Sec. 5 creates a new and different office from that provided for by Pol. Code Sec. 1543 Subd. 18 and hence illegal.

H. D. Gregory, Judge.

# In the Superior Court of the State of California
# In and for the County of Butte.

Josie E. M. Nielsen,    Plaintiff.

vs.                                No. 10291.

Lucy V. Richards, Auditor, etc.,    Defendant.

A. W. Churley,    Plaintiff.

vs.                                No. 10292

Lucy V. Richards, Auditor, etc.,    Defendant.

The above entitled actions embrace the same questions and by stipulation in court are submitted together on the defendant's demurrers, no answers having been filed, and stipulation of facts having been filed by the parties it was agreed that decision herein on the face of the pleadings and the written statement of facts be final.

The Petitioners are seeking a writ of mandate against the defendant to require her, as Auditor of Butte County to issue certain warrants on the Treasurer of Butte County for the payment to Petitioners of salaries alleged to be due them for services as supervising teachers of the public schools of Butte County.

The District Attorney has advised the Respondent that Petitioners' claims are illegal for the following reasons:

1.    The County Charter of Butte County makes provision for the supervision work in the county schools and in this respect the charter provisions govern over the general law.

2.    The general law does not give to the County Superintendent of Schools the authority to appoint supervising teachers.

3.    Conceding that the general law does give the Superintendent authority to appoint these supervising teachers, such power to appoint does not give him the power to fix their compensation.

4. Conceding again that the statute both authorizes the Superintendent to appoint and fix the compensation, the statute violates the provisions of Article XI, Section 13 of the Constitution, and to that extent is void.

The County Charter does not make provision for the supervision work in the county schools. The Charter makes provision requiring the County Superintendent (Section 5, Article VII, County Charter) "In person or by his Supervising Deputy make a visit to each teacher in every school in the county, at least twice each year, said visits to total not less than six hours, and make a visit to every school outside of incorporated cities at least every other school month; provided that in cities having City Superintendent of Schools the provisions of the general law shall apply."

Subdivision 18 of Section 1543 of the Political Code provides "for the employment of duly qualified teachers to supervise the work of teaching in the School Districts of the County, etc."

"For the payment of salaries of teachers employed by him to visit at least twice a month and to instruct pupils and direct the education of pupils who live more than five miles from the nearest public school in the District of which they are residents, and such other pupils residing in the school district as may not be able to attend the public schools for reasons which are deemed good and sufficient by the Superintendent of Schools of the County."

It is plain that under this provision of the law it was intended to authorize the County Superintendent of Schools to employ teachers to supervise the work of teaching in the school districts of the County and also to employ teachers to visit at least twice a month and to instruct pupils, etc.

By this provision it is not specified when or the number of times and the frequency of the supervising teacher to attend each school in the service of super-

vising the work of teaching, but it does authorize the County Superintendent to employ duly qualified teachers for this purpose, therefore leaving the manner of supervising the work of teaching to some proper program authorized by the County Superintendent, or likely the State Superintendent.

The provision made in Section 5 of Article VII of the County Charter is not a provision for the supervision of the work of teaching in the school districts but it is simply a provision directing the Superintendent in person or by his supervising deputy to visit the schools of the County outside of incorporated cities at least every other school month.   The general law makes it the duty of the County Superintendent of Schools to visit and examine each school in his county at least once in each year. (Subdivision 5, Sec. 1543.) The Charter provision makes it the duty to visit every other school month in person or by his supervising deputy.

Under the decision of our Supreme Court in Stern vs. City Council of Berkeley, 25 Cal. App 586 it is provided:

> "General   School   Laws   —   Conflicting Charter Provisions Controlled by. — The acts passed by the legislature, in accordance with general provisions of the constitution, providing a general system of laws concerning the creation and conduct of common schools in this state, are controlling and conclusive over conflicting charter provisions; but the charter of a city or of a city and county may provide for matters not enumerated in the general laws and are not in conflict therewith. The power of charters to so provide extends to all cases where the purpose of the provision is in furtherance of the purpose of the general laws of the state."

Subdivision 18 of Section 1543 of the Political Code provides for the supervision of the work of teaching

by qualified teachers.    The provision of the Charter, supra, detracts materially from the supervision of the work of teaching required by the general law and simply imposes an extra duty over and above the general law upon the County Superintendent of visiting the rural schools.    Under the rule laid down in Stern vs. City Council of Berkeley, Ib., the general system concerning the creation and conduct of the common schools are controlling and conclusive over conflicting charter provisions; therefore, the provision required under Subdivision 18 of Section 1543 must control.

The provision of Article VII, Section 3 (b), of the County Charter authorizing the Board of County School Trustees to appoint a supervising deputy superintendent of schools, is not a valid provision under the Constitution providing for charter enactments, and therefore the appointment of a supervising deputy is not a legal and valid appointment.

Subdivision 5 of Section 7½, of Article XI of the Constitution providing that "Any county may frame a charter for its own government consistent with and subject to the Constitution" etc.

"It shall be competent, in all charters, framed under the authority given by this section to provide, in addition to any other provisions allowable by this Constitution, and the same shall provide, for the following matters:

"5. For the fixing and regulation by boards of supervisors, by ordinance, of the appointment and number of assistants, deputies, clerks, attaches and other persons to be employed, from time to time, in the several offices of the county, and for the prescribing and regulating by such boards of the powers, duties, qualifications and compensation of such persons, the times at which, and the terms for which they shall be appointed, and the manner of their appointment and removal."

If this was all the constitutional provision in Section 7½ of Article XI it would naturally follow that the Charter could not create the position of supervising deputy county superintendent of schools, but Subdivision 6 of this section provides among other things:

"All charters framed under the authority given by this section, in addition to the matters herein above specified, may provide as follows:

"For officers other than those required by the Constitution and laws of the state, or for the creation of any or all of such offices by boards of supervisors, for the election or appointment of persons to fill such offices, for the manner of such appointment, for the times at which and the terms for which such persons shall be so elected or appointed, and for their compensation, or for the fixing of such compensation by boards of supervisors."

Referring to a portion of this section I find that the Charter is authorized to provide for officers other than those required by the Constitution and laws of the State. In Subdivision (b) of Section 3, of Article VII, the Charter has in fact created a new office, that of Supervising Deputy Superintendent of Schools; in other words, an Assistant Superintendent for the County. This the Charter was authorized to do by the Constitution and the office so created under the Charter is a valid office, but so much of the charter provision as attempts to fix the term the same as the term of the Superintendent of Schools and also attempts to authorize and empower the Board of County School Trustees to appoint a Supervising Deputy Superintendent of Schools is concerned, is not authorized and void. Subdivision 6, Section 7½ of Article XI of the Constitution, while it authorizes the creation of an office by the Charter, other than those required by the Constitution and laws of the State, does not authorize a Charter provision for fixing the term of

the officer or his compensation or for his appointment, but, on the other hand, authorizes a charter provision to authorize the Board of Supervisors to provide for the appointment and the manner of such appointment, and for the term for which he shall be appointed and for his compensation, and the Supervisors under such charter provision are required by ordinance to fix the manner of his appointment and the term for which he shall serve, and his compensation.

This has not been done.    The Charter has failed to make any such provision and the Supervisors have not by ordinance attempted to do so, which attempt would be futile without charter authorization and therefore it follows clearly that the present incumbent of the office of Supervising Deputy County Superintendent of Schools has no legal appointment to that office.    The Supreme Court in the case of Jones vs. De Shields, 187 Cal. 337 clearly sustains this contention.

Now as to the second reason advanced by the Respondent we think is erroneous.    Subdivision 18 of Section 1543 of the Political Code clearly authorizes the Superintendent of Schools of the County to employ duly qualified teachers providing that he shall use the money allowed and apportioned, etc., for the employment of duly qualified teachers.    We think that under the language of this provision it is clear that that duty is imposed upon him.

As to the third reason urged by Respondent, that the Superintendent does not have power to fix the compensation of the supervising teachers:

While it is clear that subdivision 18 of Section 1543 of the Political Code authorizes the Superintendent to employ supervising teachers it does not either directly or by implication authorize him to fix their compensation.

Subdivision 5 of Section 7½ of Article XI of the Constitution directly provides that it shall be compe-

tent for Boards of Supervisors by ordinance to fix and regulate the appointment and number of assistants, deputies, clerks, attaches and other persons to be employed, from time to time, in the several offices of the county, and for the prescribing and regulating by such boards of the powers, duties, qualifications and **compensation** of such persons.

The Charter has provided by amendment No. 2, to Section 3 of Article III, that:

> "The Board of Supervisors shall, once every four years, determine the number of deputies, assistants, clerks, and stenographers, except as herein otherwise expressly provided, for each and every county officer, and shall, at said time, fix the compensation of each and every deputy, assistant, clerk or stenographer."

In keeping with this provision of the Charter the Board of Supervisors enacted Ordinance No. 316, approved May 24, 1923, fixing and regulating the appointment of and the number of assistants, deputies, etc., in the several offices of the county, but there was no ordinance enacted at that time or any other time, so far as the record in this case shows, that provided for the fixing and regulation of the number of assistants, deputies or attaches or other persons to be employed in the office of the County Superintendent of Schools. Under this provision of the Constitution it is clear that before the Superintendent can choose and appoint the supervising teachers provided for in Subdivision 18 of Section 1543 of the Political Code, the Board of Supervisors must by ordinance fix the number of such supervising teachers and the terms for which they shall serve, and the compensation to be paid to them for that service.    It is within the power of the Board of Supervisors by ordinance to say whether there shall be one or more.    It is true that to meet the requirements of the law there must be at least one such supervising teacher in the County, but it is for the Board

of Supervisors to say whether or not there shall be more than one and to fix the number if such is required.    In doing this they should give heed to the recommendation of the County Superintendent of Schools.

We think the amendment to Section 3 or Article III of the Charter is sufficient under the Constitution authorizing the Supervisors to do this by ordinance. However, the power does not lie in the County Superintendent to either fix the number of such supervising teachers or to fix their compensation. He is not so authorized under the provision of the Political Code authorizing him to employ such supervising teachers, and the Constitution directly provides that the Charter may authorize the Board of Supervisors to do this by ordinance.

The Charter is not an enactment of the free-holders of the County or of the Board of Supervisors.    While the free-holders framed the Charter and the people adopted it, still the legislature approved it and thus it became a legislative enactment with all the force and power of any legislative enactment, subject only to the limitations provided by the Constitution and the general law. Stern vs. City Council of Berkeley, Ib.

It is urged by Respondent that neither the Charter nor the general law can authorize the County Superintendent of Schools to fix the compensation of supervising teachers and pay them accordingly.    Section 13 of Article XI, provides:

> "The legislature shall not delegate to any special commission, private corporation, company, association or individual any power to make, control, appropriate, supervise or in any way interfere with any county, city, town or municipal improvement, money, property, or effects, whether held in trust or otherwise or to levy taxes or assessments or perform any municipal function whatever, etc."

Subdivision 3 of Section 1858 of the Political Code, provides among other things, that Fourteen Hundred Dollars shall be apportioned to each County for each teacher allowed on the aggregate average daily attendance of pupils in attendance in the various school districts, each of which had less than three hundred pupils in average daily attendance for the next preceding school year and the funds thus apportioned shall constitute an emergency and supervision fund under the control of the superintendent of schools of the county and shall be used by him as provided by law.

And Subdivision 18 of Section 1543 of the Political Code provides that such money shall be used by the Superintendent for the employment of qualified teachers to supervise the work of teaching in the school districts of the County; thus placing this fund under the control of and to be paid out of the County funds to supervising teachers.

In the case of San Francisco vs. Boderick, 125 Cal. 193, at page 104, the Court held:

"If this limitation were not imposed, and if the officers were allowed to appoint deputies at will, making their salaries a charge upon the treasury, the scheme itself would be in violation of the provisions of the constitution above quoted.    But it is precisely this which it is contended that the county clerk of the City and County of San Francisco can do; that he may appoint at will such deputies and assistants as he deems necessary under the provisions of section 61 of the County Government Act, and these appointees in turn may compel payment of their salaries out of the county treasury.    But this may not be done."

It is well said by the District Attorney that if the County Superintendent had such power and such control of the public funds that he could employ as many supervising teachers as he desired and fix their com-

pensation at any sum that he wished, he would still be within the law if the contention of the Petitioner is correct.

We think the law is plain that the County Superintendent of Schools is not so authorized. He is authorized to select these teachers, but can do so only under an ordinance of the Board of Supervisors fixing the number of such teachers and the compensation to be paid them. This is clearly the intention of the general laws and of the Constitution of this State; otherwise there would be no safeguard of the public funds.

We are satisfied that the free-holders in framing the provision in the Charter creating the office of Supervising Deputy County Superintendent of Schools did so for the purpose under the apprehension that they were fulfilling the requirements of the law under Subdivision 18, Section 1543 of the Political Code requiring supervision of teachers in the rural schools, but they have failed to do so and instead thereof have created a new and different office, that of Supervising Deputy Superintendent of Schools to visit the schools in conjunction with the Superintendent himself.

The whole matter can now be easily regulated by the Board of Supervisors by ordinance fixing the number of qualified teachers to supervise the work of teaching in the school districts of the County, and fixing the terms for which they shall be employed as such teachers and the compensation to be paid them.

For these reasons the Respondent's Demurrer to the petition for a writ of mandate is sustained.

H. D. Gregory, Judge of the Superior Court.